# EXHIBIT 1

Clerk of the Superior Court
*** Electronically Filed ***
M. De La Cruz, Deputy
2/2/2024 11:54:13 AM
Filing ID 17288640

Robert W. Boatman (Bar No. 009619)
Shannon L. Clark (Bar No. 019708)
Shayna R. Frieden (Bar No. 037841)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road, Suite 1100
Phoenix, Arizona 85016-9225
Telephone:   (602) 530-8000
Facsimile:   (602) 530-8500
rwb@gknet.com
slc@gknet.com
shayna.frieden@gknet.com

*Attorneys for Plaintiffs*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| Aaron Windon and Susan Windon, husband and wife, | |
| Plaintiff, | No. CV2024-000655 |
| v. | **FIRST AMENDED COMPLAINT** |
| Home Depot U.S.A., Inc., d/b/a The Home Depot, a foreign corporation; Welding Cutting Tools & Accessories, LLC, a foreign limited liability company; Tecmen Electronics Co., Ltd., a foreign corporation; John and Jane Does I-X; Black and White Corporations I-X; and ABC Partnerships I-X, | (Strict Product Liability; Negligence) (Jury Trial Demanded) (Tier 3) |
| Defendants. | |

Plaintiffs Aaron and Susan Windon, for their Complaint against Defendants, by and through undersigned counsel, allege the following:

**PARTIES**

1.     Plaintiffs Aaron and Susan Windon, at all relevant times, were residents of Maricopa County, Arizona.

2.     Defendant Home Depot, U.S.A., Inc., doing business as The Home Depot ("Home Depot"), is a Delaware corporation, with its principal place of business at 2455 Paces Ferry Road, Atlanta, Georgia 30339, and is duly authorized to conduct business in

Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

Arizona.

3. At all relevant times, Defendant Home Depot was and is conducting business in Arizona.

4. Defendant Welding Cutting Tools & Accessories, LLC ("WCTA") is a foreign limited liability corporation incorporated in Ohio, with its principal place of business at 22801 Sant Clair Avenue, Cleveland, Ohio 44117.

5. At all relevant times, Defendant WCTA was and is conducting business in Arizona.

6. Defendant Tecmen Electronics Co., Ltd. ("Tecmen") is a Chinese-based company with its principal place of business at No. 21 North Liuzhou Road, Nanjing 210031, Jiangsu, China.

7. At all relevant times, Defendant Tecmen was and is conducting business in Arizona.

8. Defendants John and Jane Does I-X, Black and White Corporations I-X, and ABC Partnerships I-X are those persons and entities whose relationships to the named Defendants and/or whose acts or omissions give rise to legal responsibility for the damages incurred by Plaintiff, but whose true identities are at present unknown to Plaintiff. These persons and entities are hereby notified of Plaintiff's intention to join them as Defendants if and when additional investigation or discovery reveals the appropriateness of such joinder.

9. Upon belief, all Fictitious Defendants were residents of the State of Arizona, and/or were organized and existing under the laws of Arizona and doing business in the State of Arizona; and/or were foreign corporations, businesses, etc., qualified to do business within the State of Arizona, and actually doing business therein on the date of the accident alleged herein.

10. Defendant Home Depot, Defendant WCTA, Defendant Tecmen, and the fictitiously named Defendants are collectively referred to as "Defendants."

11. Defendants are vicariously liable for the negligent acts or omissions of any of

2

their employees or contractors while acting in the course and scope of their duties or employment on behalf of the said Defendants or while performing duties related to the conduct of said Defendants' businesses.

12. All Defendants are the agents, employees, alter egos and/or joint ventures of the other Defendants and all acts alleged herein were undertaken in the course and scope of said agency, employment, enterprise and/or joint venture.

## JURISDICTION AND VENUE

13. All Defendants have individually, collectively, and purposely directed activities in the State of Arizona and caused events to occur in the State of Arizona and in the County of Maricopa.

14. Upon information and belief, at all relevant times, Defendants, and each of them, conducted regular and sustained business and engaged in substantial commerce and business activity in the State of Arizona, which included but was not limited to researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce and into the State of Arizona, either directly or indirectly through third parties or related entities, its products, including the product at issue in this Complaint.

15. Upon information and belief, at all relevant times, Defendants, and each of them, expected or should have expected that their acts would have consequences within the United States including in the State of Arizona, and said Defendants derived and continue to derive substantial revenue therefrom.

16. The injuries from which this case arise occurred in Maricopa County, Arizona.

17. This Court thus has specific jurisdiction over this action and the parties to this action.

18. Venue in this Court is proper pursuant to A.R.S. §12-401, and the amount in controversy exceeds the jurisdictional limits of this Court.

. . .

3

# BACKGROUND

## A. Defendants and Their Products.

19.     Defendant Home Depot was founded in 1978 and advertises itself as the "world's largest home improvement specialty retailer," with retail stores in the United States (including Puerto Rico and the U.S. Virgin Islands, and specifically Arizona), Canada, Mexico, and China.[1]

20.     "Lincoln Electric" is a trademark/service mark that is licensed to Defendant WCTA.

21.     The Lincoln Electric Company was founded in 1895 and incorporated in the State of Ohio in 1906.  In 1998, The Lincoln Electric Company reorganized into a holding company structure—Lincoln Electric Holdings, Inc. became the publicly-held parent of The Lincoln Electric Company and other Lincoln Electric subsidiaries worldwide.  The Lincoln Electric Company is duly authorized to conduct business in Arizona.  Lincoln Electric promotes itself as having become the "global leader in arc welding and cutting,"[2] and "renowned as The Welding Experts® worldwide."  It operates 71 manufacturing locations in 20 countries and sells industrial welding products to industrial businesses and retailers.[3]

22.     "Defendant WCTA came into being in 2003, when Lincoln Electric Holdings, Inc. formed a new business unit called 'Welding, Cutting, Tools, & Accessories, LLC' (also known as 'WCTA'), for Lincoln's retail welding supply business."[4]

23.     Upon information and belief, Defendant Tecmen originally manufactured an auto-darkening welding helmet, UNK model, with model number K3063-1 (the "Subject Helmet").

24.     Defendant Tecmen was established in 1984 and specializes in industrial

---

[1] https://web.archive.org/web/20090418175604/http://corporate.homedepot.com/wps/portal/!ut/p/c0/04_SB8K8xLLM9MSSzPy8xBz9CP0os3gDdwNHH0sfE3M3AzMPJ8MAV0sDKNAvyHZUBABGeSMx/

[2] https://www.lincolnelectric.com/en/About-Us

[3] https://ir.lincolnelectric.com/

[4] Welding, Cutting, Tools & Accessories, LLC, No. 78212695, at 4 (T.T.A.B. Apr. 20, 2006), https://casetext.com/admin-law/welding-cutting-tools-accessories-llc

4

personal protective equipment ("PPE") development, including product research and development, purchasing of raw materials, manufacturing management, product circulation, supply guarantee, and after-sales services.  Its products are exported and used in over 95 countries, including the United States and specifically Arizona.  It advertises its "22 million global sales with an industry-leading market penetration."[5]

25.     Upon information and belief, Defendant WCTA is responsible for the design, manufacture, and distribution of the Subject Helmet.

26.     The Subject Helmet was manufactured in 2011.

27.     The Subject Helmet is solar powered with AAA battery assist; it is supposed to sense the light from an arc and trigger the lens's auto-darkening feature.

28.     Defendant WCTA markets the Subject Helmet with the name "Red Fierce Welding Helmet" and as "a solar-powered, auto-darkening hood for safety and protection."[6]



29.     Defendant Home Depot sells WCTA products, including the Subject Helmet.

30.     Defendant Home Depot similarly markets the Subject Helmet with the description "Auto-Darkening Welding Helmet with Variable Shade Lens No. 7-13 (1.73 x

---

[5] https://www.tecmen.com/about; https://www.tecmen.com/about/quality
[6] https://www.lincolnelectric.com/en/Products/k3063-1

5

3.82 in. Viewing Area), Red Fierce Design."[7]

31.     Because welding produces light so intense that it can cause severe damage if the welder's eyes are not adequately protected for just a few seconds, proper functioning of an auto-darkening helmet, like the Subject Helmet here, is critical.

**B.  Mr. Windon's Purchase and Use of the Subject Helmet.**

32.     On January 17, 2015, Mr. Windon purchased the Subject Helmet from Defendant Home Depot, located at 7401 S. Power Road, Queen Creek, Arizona 85242.

33.     Since purchasing the Subject Helmet, and at all times relevant to this claim, Mr. Windon was in possession of the helmet and used and cared for it appropriately.

34.     For years, the Subject Helmet worked properly.  In fact, on February 13, 2022, Mr. Windon performed welding with the Subject Helmet on and had no issues.

35.     On February 17, 2022, Mr. Windon prepared to start another welding project. He had all the suggested PPE equipment on, including safety glasses to wear underneath the Subject Helmet.

36.     Mr. Windon struck an arc, and because the Subject Helmet appeared to darken, Mr. Windon started to weld.

37.     Mr. Windon began to perform stitch welding on the driver's side floorboard of a vehicle.  Because the welding intervals were so short, Mr. Windon could not immediately tell if the Subject Helmet was darkening or if his eyes had not yet adjusted to the brightness of the flash.

38.     Although Mr. Windon immediately stopped welding, the damage was done.

**C.  Mr. Windon's Injuries Were Caused by Defects in the Subject Helmet.**

39.     As a direct and proximate result of the Subject Helmet's failure, Mr. Windon has suffered and is continuing to suffer terrible injuries and great mental distress.

40.     Mr. Windon began experiencing physical symptoms shortly after his use of the defective Subject Helmet.  Indeed, when he woke up the next morning, a strobing effect

---

[7] https://www.homedepot.com/p/Lincoln-Electric-Auto-Darkening-Welding-Helmet-with-Variable-Shade-Lens-No-7-13-1-73-x-3-82-in-Viewing-Area-Red-Fierce-Design-K3063-1/202715831

consumed his vision, and his eyes were full of matter and irritated.  Mr. Windon felt as though he was looking through fan blades.

41.     Mr. Windon's symptoms became progressively worse.  When he awoke the following morning, he could not see anything clearly, and the strobing lights in his vision were nearly unbearable.  Even with his eyes closed, the pulsing and flashing disturbances continued.

42.     On Sunday, February 20, 2022, Mr. Windon was forced to spend the entire day lying in bed.  He was no longer able to focus on anything at a distance or read even with glasses on.

43.     Mr. Windon thereafter undertook great efforts to seek medical treatment, going to doctor after doctor to try to resolve his injuries, yet he unfortunately appears to be stuck with a condition that cannot be effectively cured.

44.     On Monday, February 21, 2022, Mr. Windon contacted Southwestern Eye Center and requested to be evaluated immediately.  He tried his best to work for half a day (at his job as an engineer) before going to Southwestern Eye Center, where he was examined by Dr. Pugh.

45.     Dr. Pugh found Mr. Windon had exposure keratoconjunctivitis in both eyes, a condition that results from the eye's surface not being adequately protected.

46.     Over the next three days, Mr. Windon attempted yet was unable to work.

47.     By March 14, 2022, Mr. Windon's vision issues remained so troubling that he could not go on his preplanned vacation.  He used the next four days to try to rest and recover, though his symptoms did not lessen.

48.     On March 17, 2022, Mr. Windon returned to Southwestern Eye Center.  Dr. Pugh again found Mr. Windon presented with exposure keratoconjunctivitis, however he still could not diagnose Mr. Windon's medical condition.

49.     On March 21st and 24th, Mr. Windon went back to Southwestern Eye Center to be fitted for contacts.  Mr. Windon's injuries, however, were not just focal.  Even with glasses and contacts taking care of the physical optics portion of Mr. Windon's vision, he

7

could not see clearly—everything he looked at seemed to be moving; when he closed his eyes, he saw bright lights flashing and pulsating; and when he was in a dark room, he experienced as many as four superimposed bright flashes per second.

50. On April 5, 2023, Mr. Windon went to Barnet Dulaney Perkins Eye Center, where Dr. Nappi performed an eye exam and discussed with Mr. Windon his candidacy for an eye lens replacement.

51. Over the next month, the intensity of Mr. Windon's symptoms remained.

52. On May 25, 2022, Mr. Windon went back to Southwestern Eye Center and met with Dr. Adelberg, a retinal specialist. Dr. Adelberg noted that Mr. Windon had multiple vitreous floaters, and he diagnosed Mr. Windon with a persistent, ocular migraine and central scotoma in both eyes.

53. Dr. Adelberg referred Mr. Windon to Dr. Subei, a Neuro-Ophthalmologist at Foothills Neurology, for treatment.

54. Prior to his appointment at Foothills Neurology, on June 1, 2022, Mr. Windon took a field of vision test at Southwestern Eye Center. Central scotoma in both eyes was again found.

55. On June 8, 2022, Mr. Windon underwent multiple eye tests, including another field of vision test, at Foothills Neurology.

56. On June 14, 2022, Mr. Windon returned to Foothills Neurology for his initial appointment with Dr. Subei. Dr. Subei ordered Orbital and Brain MRIs, as well as an EEG, VEP, and an ERG. Dr. Subei also referred Mr. Windon for a retinal consult.

57. On June 24, 2022, Mr. Windon saw Dr. Bakall at Associated Retinal Consultants. Dr. Bakall explained to Mr. Windon that the findings of his retinal exams were most likely consistent with persistent ophthalmoplegic migraine/visual snow. **Visual snow syndrome is a chronic condition with no general effective treatment strategy.**

58. On June 25, 2022, Mr. Windon went to Simon Med Imaging to undergo the MRIs.

59. On July 5, 2022, Mr. Windon went to Foothills Neurology to undergo the

EEG test, and he returned on July 7th for the VEP test.

60. The MRIs, EEG, and VEP all returned significantly normal findings.

61. On July 8, 2022, Dr. Subei determined that **the most probable cause of Mr. Windon's symptoms was retinal damage due to the welding incident**.

62. On July 18, 2022, Mr. Windon had a follow up appointment with Dr. Subei. Based on Mr. Windon's severe symptoms and largely normal test results, Dr. Subei's diagnosis favored Welder's Maculopathy, a form of photochemical damage to the retinas. **Dr. Subei reaffirmed that such damage was caused by the bright welding lights**.

63. Mr. Windon's severe symptoms and vision issues—such as seeing non-stop flashing even when his eyes are closed—took a significant toll on him.  This constant and chronic condition resulted in extreme frustration and anxiety, to the point where Mr. Windon truly and regularly considered whether he could live with such a level of mental and psychological torment.

64. On August 3, 2022, Optima Medical diagnosed Mr. Windon with severe major depression.

65. Mr. Windon also saw a psychiatrist at the Mayo Clinic to work on improving his mental health.

66. On October 28, 2022, Mr. Windon had another appointment with Dr. Bakall and underwent the ERG test. Dr. Bakall confirmed that Mr. Windon's symptoms are most likely attributable to persistent ophthalmoplegic migraines and Visual Snow Syndrome.

67. Now, nearly two years after the accident, Mr. Windon continues to experience ocular migraines with auras and eye pressure.  His symptoms are nonstop—24/7—and include: everything appears washed-out in colorless light; objects look as though they are shifted down and to the right and rapidly moving; he sees flickering dots persistently across his field of vision; he sees an "after image" for 15-25 seconds of any bright lights, such as lights through vertical window blinds or reflections from the sun; and he sees flashing, superimposed bright lights, and pulsing from dark to light, which makes it especially difficult for Mr. Windon to see in low-light conditions.  Such symptoms have also made it

9

especially difficult for Mr. Windon to work, including reading, reviewing electrical schematics and technical drawings, and writing code and performing other computer work.

68. Mr. Windon bought and relied on the Subject Helmet to protect him. But without warning, it failed and left him with extreme physical and mental damages. All of Mr. Windon's daily activities, professional activities, and hobbies have been disrupted, his personal relationships have been damaged, and his quality of life has been devastated.

## COUNT I

### (STRICT LIABILITY – DEFECTIVE PRODUCT BY DEFENDANTS)

69. Plaintiffs incorporate by reference all previous allegations in their Complaint.

70. Because Defendants Tecmen and WCTA manufactured and prepared a product for sale—the Subject Helmet—with unreasonably dangerous defects, Defendant Home Depot sold such product to Mr. Windon, all failed to warn of its hazards, and such defects caused Mr. Windon to suffer injuries, strict liability attaches.

71. Defendant Home Depot is deemed a "seller" under Arizona law.

72. Defendants Tecmen and WCTA are deemed "manufacturers" under Arizona law.

73. Defendant Tecmen originally manufactured the Subject Helmet and WCTA contributed to the design and manufacture, as well as distributed the Subject Helmet for sale, which Mr. Windon purchased from Defendant Home Depot in January 2015.

74. As a manufacturer, prior to, on, and after the date of the Subject Helmet's failure, Defendants Tecmen and WCTA had a duty to know or, through testing and other investigation, should know of the product's hazards. They then had the duty to provide adequate warnings about those hazards to the foreseeable consumer, such as Mr. Windon.

75. The Subject Helmet was in a defective condition when Mr. Windon purchased it from Defendant Home Depot, as prior to the incident, Mr. Windon only ever used the Subject Helmet in a proper manner and stored it in a clean, dry location.

76. In Arizona, a product can be defective if it fails to satisfy either the "consumer expectations" test or the risk/benefit test. Both are satisfied here.

10

77.     The Subject Helmet's design and/or manufacturing defects, as well as the lack of adequate warnings as to the risks involved in using the product, made the product unreasonably dangerous to its users employing it in a reasonably foreseeable manner.

78.     Mr. Windon used the Subject Helmet in a reasonably foreseeable manner by wearing it while performing welding.

79.     The Subject Helmet was defective in design and/or manufacturing as its auto-darkening feature failed during use by Mr. Windon while welding.

80.     The Subject Hood's design defect, in particular, made the Subject Hood unreasonably dangerous because beyond manually testing the functioning of the helmet by placing it in light and seeing whether it darkens, the helmet does not provide a low battery or battery failure indicator, a way for the user to test the internal battery, or a way for the user to remove and replace the battery.

81.     As a result of the design and/or manufacturing defects, the Subject Helmet failed to perform as safely as an ordinary consumer, including Mr. Windon, would expect when using it in an intended and reasonably foreseeable manner.

82.     The defect in the design of the Subject Helmet is further evidenced by the 2017 version of the Subject Helmet, which provides a low battery indicator, a battery test function, and an easy way to remove and replace the two AAA batteries.[8]

83.     No benefits of the Subject Helmet would have been lost or reduced by incorporating these safety features.  Rather, the usefulness and desirability would be enhanced.

84.     Likewise, the lack of appropriate warnings as to the Subject Helmet's dangerous characteristics made the Subject Helmet defective and unreasonably dangerous.

85.     Defendants failed to provide adequate warnings to foreseeable consumers, such as Mr. Windon, about the Subject Helmet's hazards.  Indeed, neither the Subject Helmet, operator's manual, or Defendants' respective websites warn of the batteries failing or the visual disturbances that can result from the light and arc rays.

---

[8] https://www.lincolnelectric.com/assets/servicenavigator-public/lincoln3/imt10358.pdf

11

86. The Subject Helmet's design and/or manufacturing defects, and Defendants' failure to warn of the battery charge issue and sensory damage that could result, were a direct and proximate cause of Mr. Windon's injuries. Shortly after using the defective Subject Helmet, Mr. Windon's vision began to deteriorate—a reasonably foreseeable consequence of exposure to bright light and ultraviolet and infrared rays.

87. Therefore, Defendants are liable for Mr. Windon's injuries, including the extreme and lasting visual disturbances and tremendous mental distress as described above, as well as other special and general damages according to proof at trial.

**COUNT II**
**(NEGLIGENCE – DESIGN, MANUFACTURE, INSPECTION, AND DISTRIBUTION BY DEFENDANTS TECMEN AND WCTA)**

88. Plaintiffs incorporate by reference all preceding paragraphs.

89. Prior to, on, and after the date of the Subject Helmet's failure, Defendants Tecmen and WCTA had a duty to exercise due care and avoid unreasonable risk of harm in and about their design, testing, manufacture, inspection, distribution, marketing, and sale of the Subject Helmet.

90. Put simply, Defendants Tecmen and WCTA owed a duty of care to all of its retailer customers to ensure the products it placed into the stream of commerce, including the Subject Helmet, were reasonably safe for use.

91. Prior to, on, and after the date of the Subject Helmet's failure, Defendants Tecmen and WCTA designed, tested, manufactured, inspected, distributed, marketed, and sold the Subject Helmet for use by consumers, such as Mr. Windon, in the United States, including Arizona.

92. Upon information and belief, prior to and on the date of the Subject Helmet's failure, Defendants Tecmen and WCTA breached its duty of care by, but not limited to, the following:

    a. Designing, manufacturing, and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking safety measures or including warnings to reduce or avoid harm;

12

b. Failing to perform reasonable pre- and post-market testing of the Subject Helmet to determine whether or not the product was safe for its intended use;

c. Failing to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would use the Subject Helmet, including Mr. Windon;

d. Advertising, marketing, and recommending the use of the Subject Helmet, while concealing and failing to disclose or to warn of the dangers known by Defendants Tecmen and WCTA to be connected with and inherent in the use of the Subject Helmet;

e. Representing that the Subject Helmet was safe for its intended use when, in fact, Defendants knew or should have known the product was not safe for its intended purpose;

f. Failing to use reasonable and prudent care in the design, research, manufacture, and development of the Subject Helmet so as to avoid the risk of serious harm associated with its use;

g. Failing to establish an adequate quality assurance program used in the manufacturing of the Subject Helmet; and

h. Failing to perform adequate evaluation and testing of the Subject Helmet, which would have revealed the propensity of the Subject Helmet to cause injuries as described herein.

93. As a direct and legal result of the above-described negligence in design, testing, manufacture, inspection, distribution, marketing, and sale of the Subject Helmet, Mr. Windon sustained and continues to suffer from the great injuries and damages described above.

**COUNT III**
**(NEGLIGENCE - FAILURE TO WARN AND RECALL**
**BY ALL DEFENDANTS)**

94. Plaintiffs incorporate by reference all preceding paragraphs.

95. Prior to, on, and after the date of the Subject Helmet's failure, and at all relevant times, Defendants designed, manufactured, distributed, marketed, and/or sold the Subject Helmet for use by consumers, such as Mr. Windon, in the United States, including Arizona.

96. Prior to, on, and after the date of the Subject Helmet's failure, Defendants had a duty to exercise due care and avoid unreasonable risk of harm in and about their design, testing, manufacture, distribution, marketing, and sale of the Subject Helmet.

13

97. Defendants owe a duty of care to all of their retail customers, including Mr. Windon, to ensure the products it places into the stream of commerce are reasonably safe for use.

98. Prior to, on, and after the date of the Subject Helmet's failure, and at all relevant times, Defendants knew or reasonably should have known that the Subject Helmet was unreasonably dangerous or likely to be dangerous when used in a reasonably foreseeable manner.

99. Prior to, on, and after the date of the Subject Helmet's failure, and at all relevant times, Defendants became aware that the defects of the Subject Helmet resulted in failures similar to those experienced by Mr. Windon.

100. A cursory inspection of the reviews on Home Depot's website exposes the serious danger the Subject Helmet poses.[9]



---

[9] https://www.homedepot.com/p/Lincoln-Electric-Auto-Darkening-Welding-Helmet-with-Variable-Shade-Lens-No-7-13-1-73-x-3-82-in-Viewing-Area-Red-Fierce-Design-K3063-1/202715831

14

★☆☆☆☆                                                          Aug 25, 2019

**Worthless and dangerous**

Don't buy this. Simply. It is unreliable at best. It will fail to darken when striking the arc. It happened to me just after a couple of uses. This is a very dangerous equipment. Should be retired from market.

by MechanicalEngineer

[ Helpful? ]

★☆☆☆☆                                                          Jul 16, 2018

**Garbage**

Finally decided to get an auto- dark shield. Brand name should be fine right?... Nope garbage. Used it today for the first time, worked correctly for about 10 minutes. Then started to blink on and off and then would dim at all. Then it went completely dark and I was back to the flip down method. Waste of $$

by Jflan

★☆☆☆☆                                                          Feb 22, 2017

**This piece of junk lost darkening in the middle of welding which nearly gave me welding flash. Of...**

This piece of junk lost darkening in the middle of welding which nearly gave me welding flash. Of course it failed 10 days after the 90 day return policy. I grabbed my cheap Fornay helmet that is 4 years old and still works perfectly.

by blinded

[ Helpful? ]   2 found this review helpful

★☆☆☆☆                                                          Dec 27, 2015

**Failed: too long on the shelf**

The helmet didn't work even after hours of charging. The user guide was dated March 2011 and I suppose the batteries, which cannot be replaced, were dead. Waste of time purchasing and returning. The manual is not clear. There is no diagnostic test to confirm auto darkening feature. Bad product if it's been on the shelf for 4 + years.

by mckbill

[ Helpful? ]   1 found this review helpful

★☆☆☆☆                                                          Jul 25, 2015

**RUN FROM THIS PRODUCT!**

Worst welding shield I have ever used...I am in ironworker and weld for a living I needed a shield quick to replace a broken one and thought the Lincoln would give a good affordable replacement. Boy was I wrong it is not even two months old and very unreliable and that is not being used daily. In the middle of welding it will blink on and off sometimes it will not dark in at all. I would give it a -5 star rating if they permitted it but unfortunately I had to give it at least a one star! Stay away from this shield if you want your eyes to last you!

by Anonymous

[ Helpful? ]   4 found this review helpful

15

101. Along with the online reviews, several videos online detail similar incidents that demonstrate the existence of the Subject Helmet's dangerous condition. Such other similar incidents ("OSI") further demonstrate that Defendants have known for years about the very safety-related defects in the Subject Helmet that are present in this case—the auto-darkening feature failing, the lack of warnings when the auto-darkening feature is no longer working properly, and an inability for users to sufficiently test whether the auto-darkening feature is performing correctly.

102. Upon information and belief, prior to and on the date of the Subject Helmet's failure, Defendants breached their duty of care by, but not limited to, the following:

a. Failing to use reasonable care to recall, warn, or instruct consumers, including Mr. Windon, about the defects and unreasonably dangerous condition or about facts making the Subject Helmet likely to be dangerous;

b. Failing to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would use the Subject Helmet, including Mr. Windon;

c. Advertising, marketing, and recommending the use of the Subject Helmet, while concealing and failing to disclose or to warn of the dangers known by Defendants to be connected with and inherent in the use of the Subject Helmet;

103. Defendants continue to fail to recall or warn of the Subject Helmet's defects and dangers up until the present time.

104. Moreover, because each OSI provided notice to Defendants of defects and the severity of danger presented by the defects, Defendants' continued distribution of the Subject Helmet reflects a conscious disregard of a known risk and negligence in failing to warn.

105. That the Subject Helmet's operator's manual advises users to test the hood prior to use provides additional support that Defendants knew of or had reason to know of the hood's risks and is thus compelling evidence that Defendants' conduct to continue to sell the Subject Helmet without additional warnings was highly unreasonable.

106. Reasonable manufacturers and sellers under the same or similar circumstances would have recalled the Subject Helmet or at least warned of the Subject

16

Helmet's defects and would thereby have avoided and prevented harm to consumers, including Mr. Windon.

107. Damage to eyes and sensory perception are foreseeable results of the auto-darkening feature failing to work. And due to the lack of warnings, this danger was hidden; a consumer, like Mr. Windon, could not take any further precaution to avoid injury.

108. As a direct and legal result of the above-described negligent failure to recall or warn, Mr. Windon sustained and continues to suffer from the great injuries and damages as described above.

## COUNT IV
## (LOSS OF CONSORTIUM FOR PLAINTIFF SUSAN WINDON)

109. Plaintiffs incorporate by reference all preceding paragraphs.

110. Defendants owed Plaintiff certain duties, including but not limited to, exercising due care and avoiding unreasonable risk of harm in and about their design, testing, manufacture, inspection, distribution, marketing, and sale of the Subject Helmet.

111. Defendants breached their duties by, and not limited to, failing to use reasonable and prudent care in the design, research, manufacture, and development of the Subject Helmet so as to avoid the risk of serious harm associated with its use; failing to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would use the Subject Helmet; and failing to disclose or to warn of the dangers known to be connected with and inherent in the use of the Subject Helmet.

112. Defendants' negligent conduct was the proximate cause of Plaintiff Susan Windon's loss of consortium, including but not limited to:

    a. Physical intimacy;

    b. Inability to do activities that she used to do with her husband;

    c. Marital strains;

    d. Loss of services;

    e. Aid and comfort;

17

f. Enjoyment of life; and

g. Other losses to be presented at trial.

113. Plaintiff Susan Windon's loss of consortium damages are the proximate result of Defendants' negligence as alleged herein.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury in this matter.  This matter is not subject to compulsory arbitration.

## TIER DESIGNATION

Plaintiffs certify that this case warrants Tier 3 designation under Ariz. R. Civ. P. 26.2(b)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment to be entered against Defendants as follows:

A. For general damages to compensate Plaintiffs for the pain, mental and/or emotional suffering, limitations, and stress experienced and will experience in the future;

B. For other reasonable general and special damages for Plaintiffs' injuries according to proof at the time of trial;

C. For compensatory damages in an amount to be proven at trial;

E. For costs incurred herein as permitted by Arizona law; and,

F. For such other and further relief as the Court deems just and proper.

DATED:  January 2, 2024.

GALLAGHER & KENNEDY, P.A.

By: /s/ *Robert W. Boatman*
    Robert W. Boatman
    Shannon L. Clark
    Shayna R. Frieden
    2575 East Camelback Road, Suite 1100
    Phoenix, Arizona 85016
    Attorneys for Plaintiffs

9800974v1/41199-0001

18

# EXHIBIT 2

Case: 1:24-cv-00938-BMB  Doc #: 1-1  Filed: 03/07/24  21 of 56.  PageID #: 28

« Return to search results

## Case Information

| | | | |
|---|---|---|---|
| **Case Number:** | CV2024-000655 | **Judge:** | Blaney, Scott |
| **File Date:** | 1/10/2024 | **Location:** | Downtown |
| **Case Type:** | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Aaron Windon | Plaintiff | Male | Robert Boatman |
| Susan Windon | Plaintiff | Female | Robert Boatman |
| Home Depot U S A Inc | Defendant | | Pro Per |
| Lincoln Electric Holdings Inc | Defendant | | Pro Per |
| Lincoln Electric Company, The | Defendant | | Pro Per |
| Tecmen Elctronics Co Ltd | Defendant | | Pro Per |
| Welding Cutting Tools & Accessories L L C | Defendant | | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 2/2/2024 | AMC - Amended Complaint | 2/5/2024 | |
| **NOTE:** | First Amended Complaint | | |
| 1/10/2024 | COM - Complaint | 1/11/2024 | |
| **NOTE:** | Complaint | | |
| 1/10/2024 | CSH - Coversheet | 1/11/2024 | |
| **NOTE:** | Civil Cover Sheet | | |
| 1/10/2024 | CCN - Cert Arbitration - Not Subject | 1/11/2024 | |
| **NOTE:** | Certificate Of Compulsory Arbitration - Is Not Subject To | | |
| 1/10/2024 | SUM - Summons | 1/11/2024 | |
| **NOTE:** | Summons | | |
| 1/10/2024 | SUM - Summons | 1/11/2024 | |
| **NOTE:** | Summons | | |
| 1/10/2024 | SUM - Summons | 1/11/2024 | |
| **NOTE:** | Summons | | |
| 1/10/2024 | SUM - Summons | 1/11/2024 | |
| **NOTE:** | Summons | | |

## Case Calendar

**There are no calendar events on file**

## Judgments

| Date | (F)or / (A)gainst | Amount | Frequency | Type | Status |
|---|---|---|---|---|---|
| **No records found.** | | | | | |

# EXHIBIT 3

# In the Superior Court of the State of Arizona In and For the County of Maricopa

Clerk of the Superior Court
*** Electronically Filed ***
R. Lundgren, Deputy
1/10/2024 1:27:02 PM
Filing ID 17164971

**Plaintiff's Attorneys:**

Robert W Boatman - Primary Attorney
Bar Number: 009619, issuing State: AZ
Law Firm: Gallagher and Kennedy P.A.
2575 E Camelback Rd, Ste 1100
Phoenix, AZ 85016
Telephone Number: (602)530-8000
Email address: rwb@gknet.com

CV2024-000655

Shannon L. Clark
Bar Number: 019708, issuing State: AZ
Law Firm: Gallagher and Kennedy P.A.
Telephone Number: (602)530-8000

Shayna R. Frieden
Bar Number: 037841, issuing State: AZ
Law Firm: Gallagher and Kennedy P.A.
Telephone Number: (602)530-8000

**Plaintiffs:**

Aaron Windon

Susan Windon

**Defendants:**

Home Depot U.S.A.,, DBA The Home Depot, a foreign corporation

Lincoln Electric Holdings, Inc., a foreign corporation

The Lincoln Electric Company, a foreign corporation

Tecmen Electronics Co., Ltd. a foreign corporation

Discovery Tier t3

Case Category: Other Civil Case Categories
Case Subcategory: Strict Product Liability; Negl

Civil Cover Sheet
Page 1 of 1

Clerk of the Superior Court
*** Electronically Filed ***
R. Lundgren, Deputy
1/10/2024 1:27:02 PM
Filing ID 17164972

Person/Attorney Filing: Robert W Boatman
Mailing Address: 2575 E Camelback Rd, Ste 1100
City, State, Zip Code: Phoenix, AZ 85016
Phone Number: (602)530-8000
E-Mail Address: rwb@gknet.com
[ □ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009619, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

Aaron Windon, et al.
Plaintiff(s),

v.

Home Depot U.S.A.,, DBA The Home
Depot, a foreign corporation, et
al.
Defendant(s).

Case No. **CV2024-000655**

**CERTIFICATE OF
COMPULSORY ARBITRATION**

I certify that I am aware of the dollar limits and any other limitations set forth by the
Local Rules of Practice for the Maricopa County Superior Court, and I further certify that
this case IS NOT subject to compulsory arbitration, as provided by Rules 72 through 77 of
the Arizona Rules of Civil Procedure.

RESPECTFULLY SUBMITTED this

By: Robert W Boatman /s/
Plaintiff/Attorney for Plaintiff

AZTurboCourt.gov Form Set #8486589

Clerk of the Superior Court
*** Electronically Filed ***
R. Lundgren, Deputy
1/10/2024 1:27:02 PM
Filing ID 17164973

Person/Attorney Filing: Robert W Boatman
Mailing Address: 2575 E Camelback Rd, Ste 1100
City, State, Zip Code: Phoenix, AZ 85016
Phone Number: (602)530-8000
E-Mail Address: rwb@gknet.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009619, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Aaron Windon, et al.
Plaintiff(s),

v.

Home Depot U.S.A.,, DBA The Home
Depot, a foreign corporation, et
al.
Defendant(s).

Case No. **CV2024-000655**

**SUMMONS**

To: Home Depot U.S.A.,, DBA The Home Depot, a foreign corporation

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

AZTurboCourt.gov Form Set #8486589

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *January 10, 2024*

*JEFF FINE*
Clerk of Superior Court

By: *R. LUNDGREN*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZTurboCourt.gov Form Set #8486589

Clerk of the Superior Court
*** Electronically Filed ***
R. Lundgren, Deputy
1/10/2024 1:27:02 PM
Filing ID 17164975

Person/Attorney Filing: Robert W Boatman
Mailing Address: 2575 E Camelback Rd, Ste 1100
City, State, Zip Code: Phoenix, AZ 85016
Phone Number: (602)530-8000
E-Mail Address: rwb@gknet.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009619, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Aaron Windon, et al.
Plaintiff(s),
v.
Home Depot U.S.A.,, DBA The Home
Depot, a foreign corporation, et
al.
Defendant(s).

Case No. **CV2024-000655**

**SUMMONS**

To: The Lincoln Electric Company, a foreign corporation

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation. Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

AZturboCourt.gov Form Set #8486589

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of MARICOPA

SIGNED AND SEALED this Date: *January 10, 2024*

*JEFF FINE*
Clerk of Superior Court

By: *R. LUNDGREN*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

2

Clerk of the Superior Court
*** Electronically Filed ***
R. Lundgren, Deputy
1/10/2024 1:27:02 PM
Filing ID 17164974

Person/Attorney Filing: Robert W Boatman
Mailing Address: 2575 E Camelback Rd, Ste 1100
City, State, Zip Code: Phoenix, AZ 85016
Phone Number: (602)530-8000
E-Mail Address: rwb@gknet.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009619, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Aaron Windon, et al.
Plaintiff(s),

v.

Home Depot U.S.A.,, DBA The Home Depot, a foreign corporation, et al.
Defendant(s).

Case No. **CV2024-000655**

**SUMMONS**

To: Lincoln Electric Holdings, Inc., a foreign corporation

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

AZTurboCourt.gov Form Set #8486589

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

SIGNED AND SEALED this Date: *January 10, 2024*

*JEFF FINE*
Clerk of Superior Court

By: *R. LUNDGREN*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

AZturboCourt.gov Form Set #8486589

2

Clerk of the Superior Court
*** Electronically Filed ***
R. Lundgren, Deputy
1/10/2024 1:27:02 PM
Filing ID 17164976

Person/Attorney Filing: Robert W Boatman
Mailing Address: 2575 E Camelback Rd, Ste 1100
City, State, Zip Code: Phoenix, AZ 85016
Phone Number: (602)530-8000
E-Mail Address: rwb@gknet.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 009619, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

Aaron Windon, et al.
Plaintiff(s),

v.

Home Depot U.S.A.,, DBA The Home
Depot, a foreign corporation, et
al.
Defendant(s).

Case No. **CV2024-000655**

**SUMMONS**

To: Tecmen Electronics Co., Ltd. a foreign corporation

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS SUMMONS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an Answer in writing with the Court, and you must pay the required filing fee. To file your Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson, Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top of this Summons.
Note: If you do not file electronically you will not have electronic access to the documents in this case.

3. If this Summons and the other court papers were served on you within the State of Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the date of service, not counting the day of service. If this Summons and the other court papers were served on you outside the State of Arizona, your Answer must be filed within THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of service.

AZTurboCourt.gov Form Set #8486589

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of MARICOPA

SIGNED AND SEALED this Date: *January 10, 2024*

*JEFF FINE*
Clerk of Superior Court

By: *R. LUNDGREN*
Deputy Clerk



Requests for an interpreter for persons with limited English proficiency must be made to the division assigned to the case by the party needing the interpreter and/or translator or his/her counsel at least ten (10) judicial days in advance of a scheduled court proceeding.

If you would like legal advice from a lawyer, contact Lawyer Referral Service at 602-257-4434 or https://maricopabar.org. Sponsored by the Maricopa County Bar Association.

2

Clerk of the Superior Court
*** Electronically Filed ***
R. Lundgren, Deputy
1/10/2024 1:27:02 PM
Filing ID 17164970

Robert W. Boatman (Bar No. 009619)
Shannon L. Clark (Bar No. 019708)
Shayna R. Frieden (Bar No. 037841)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
Telephone:    (602) 530-8000
Facsimile:    (602) 530-8500
rwb@gknet.com
slc@gknet.com
shayna.frieden@gknet.com

*Attorneys for Plaintiffs*

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| Aaron Windon and Susan Windon, husband and wife,<br><br>Plaintiff,<br><br>v.<br><br>Home Depot U.S.A., Inc., d/b/a The Home Depot, a foreign corporation; Lincoln Electric Holdings, Inc., a foreign corporation; The Lincoln Electric Company, a foreign corporation; Tecmen Electronics Co., Ltd., a foreign corporation; John and Jane Does I-X; Black and White Corporations I-X; and ABC Partnerships I-X,<br><br>Defendants. | No. CV2024-000655<br><br>**COMPLAINT**<br><br>(Strict Product Liability; Negligence)<br><br>(Jury Trial Demanded)<br><br>(Tier 3) |

Plaintiffs Aaron and Susan Windon, for their Complaint against Defendants, by and through undersigned counsel, allege the following:

## PARTIES

1.     Plaintiffs Aaron and Susan Windon, at all relevant times, were residents of Maricopa County, Arizona.

2.     Defendant Home Depot, U.S.A., Inc., doing business as The Home Depot ("Home Depot"), is a Delaware corporation, with its principal place of business at 2455 Paces Ferry Road, Atlanta, Georgia 30339, and is duly authorized to conduct business in

Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

Arizona.

3. At all relevant times, Defendant Home Depot was and is conducting business in Arizona.

4. Defendant Lincoln Electric Holdings, Inc. is the publicly held parent of Defendant The Lincoln Electric Company (collectively, "Lincoln Electric").

5. Defendant The Lincoln Electric Company is an Ohio corporation, with its principal place of business at 22801 St. Clair Avenue, Cleveland, Ohio 44117, and is duly authorized to conduct business in Arizona.

6. At all relevant times, Defendant Lincoln Electric was and is conducting business in Arizona.

7. Defendant Tecmen Electronics Co., Ltd. ("Tecmen") is a Chinese-based company with its principal place of business at No. 21 North Liuzhou Road, Nanjing 210031, Jiangsu, China.

8. At all relevant times, Defendant Tecmen was and is conducting business in Arizona.

9. Defendants John and Jane Does I-X, Black and White Corporations I-X, and ABC Partnerships I-X are those persons and entities whose relationships to the named Defendants and/or whose acts or omissions give rise to legal responsibility for the damages incurred by Plaintiff, but whose true identities are at present unknown to Plaintiff. These persons and entities are hereby notified of Plaintiff's intention to join them as Defendants if and when additional investigation or discovery reveals the appropriateness of such joinder.

10. Upon belief, all Fictitious Defendants were residents of the State of Arizona, and/or were organized and existing under the laws of Arizona and doing business in the State of Arizona; and/or were foreign corporations, businesses, etc., qualified to do business within the State of Arizona, and actually doing business therein on the date of the accident alleged herein.

11. Defendant Home Depot, Defendant Lincoln Electric, Defendant Tecmen, and

the fictitiously named Defendants are collectively referred to as "Defendants."

12. Defendants are vicariously liable for the negligent acts or omissions of any of their employees or contractors while acting in the course and scope of their duties or employment on behalf of the said Defendants or while performing duties related to the conduct of said Defendants' businesses.

13. All Defendants are the agents, employees, alter egos and/or joint ventures of the other Defendants and all acts alleged herein were undertaken in the course and scope of said agency, employment, enterprise and/or joint venture.

## JURISDICTION AND VENUE

14. All Defendants have individually, collectively, and purposely directed activities in the State of Arizona and caused events to occur in the State of Arizona and in the County of Maricopa.

15. Upon information and belief, at all relevant times, Defendants, and each of them, conducted regular and sustained business and engaged in substantial commerce and business activity in the State of Arizona, which included but was not limited to researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce and into the State of Arizona, either directly or indirectly through third parties or related entities, its products, including the product at issue in this Complaint.

16. Upon information and belief, at all relevant times, Defendants, and each of them, expected or should have expected that their acts would have consequences within the United States including in the State of Arizona, and said Defendants derived and continue to derive substantial revenue therefrom.

17. The injuries from which this case arise occurred in Maricopa County, Arizona.

18. This Court thus has specific jurisdiction over this action and the parties to this action.

19. Venue in this Court is proper pursuant to A.R.S. §12-401, and the amount in

3

controversy exceeds the jurisdictional limits of this Court.

**BACKGROUND**

**A. Defendants and Their Products.**

20. Defendant Home Depot was founded in 1978 and advertises itself as the "world's largest home improvement specialty retailer," with retail stores in the United States (including Puerto Rico and the U.S. Virgin Islands, and specifically Arizona), Canada, Mexico, and China.[1]

21. The Lincoln Electric Company was founded in 1895 and incorporated in the State of Ohio in 1906. In 1998, The Lincoln Electric Company reorganized into a holding company structure—Lincoln Electric Holdings, Inc. became the publicly-held parent of The Lincoln Electric Company and other Lincoln Electric subsidiaries worldwide.

22. Defendant Lincoln Electric promotes itself as having become the "global leader in arc welding and cutting."[2]

23. Defendant Lincoln Electric is self-described as "renowned as The Welding Experts® worldwide." It operates 71 manufacturing locations in 20 countries and sells its products directly to consumers and through industrial distributors and retailers in over 160 countries, including Arizona.[3]

24. Upon information and belief, Defendant Tecmen originally manufactured an auto-darkening welding helmet, UNK model, with model number K3063-1 (the "Subject Helmet").

25. Defendant Tecmen was established in 1984 and specializes in industrial personal protective equipment ("PPE") development, including product research and development, purchasing of raw materials, manufacturing management, product circulation, supply guarantee, and after-sales services. Its products are exported and used

---

[1] https://web.archive.org/web/20090418175604/http://corporate.homedepot.com/wps/porta l/!ut/p/c0/04_SB8K8xLLM9MSSzPy8xBz9CP0os3gDdwNHH0sfE3M3AzMPJ8MAV0s DKNAvyHZUBABGeSMx/
[2] https://www.lincolnelectric.com/en/About-Us
[3] https://ir.lincolnelectric.com/

4

in over 95 countries, including the United States and specifically Arizona. It advertises its "22 million global sales with an industry-leading market penetration."[4]

26. Upon information and belief, Defendant Tecmen has been in cooperation with Defendant Lincoln Electric, as a global top-brand company, to distribute and retail its products.

27. Upon information and belief, Defendant Tecmen supplied the Subject Helmet to Defendant Lincoln Electric, and Defendant Lincoln Electric prepared the product for sale and distributed and retailed the product with its brand.

28. The Subject Helmet was manufactured in 2011.

29. The Subject Helmet is solar powered with AAA battery assist; it is supposed to sense the light from an arc and trigger the lens's auto-darkening feature.

30. Defendant Lincoln Electric markets the Subject Helmet with the name "Red Fierce Welding Helmet" and as "a solar-powered, auto-darkening hood for safety and protection."[5]



31. Defendant Home Depot sells Lincoln Electric products, including the Subject Helmet.

32. Defendant Home Depot similarly markets the Subject Helmet with the

---

[4] https://www.tecmen.com/about; https://www.tecmen.com/about/quality
[5] https://www.lincolnelectric.com/en/Products/k3063-1

5

description "Auto-Darkening Welding Helmet with Variable Shade Lens No. 7-13 (1.73 x 3.82 in. Viewing Area), Red Fierce Design."[6]

33. Because welding produces light so intense that it can cause severe damage if the welder's eyes are not adequately protected for just a few seconds, proper functioning of an auto-darkening helmet, like the Subject Helmet here, is critical.

**B. Mr. Windon's Purchase and Use of the Subject Helmet.**

34. On January 17, 2015, Mr. Windon purchased the Subject Helmet from Defendant Home Depot, located at 7401 S. Power Road, Queen Creek, Arizona 85242.

35. Since purchasing the Subject Helmet, and at all times relevant to this claim, Mr. Windon was in possession of the helmet and used and cared for it appropriately.

36. For years, the Subject Helmet worked properly. In fact, on February 13, 2022, Mr. Windon performed welding with the Subject Helmet on and had no issues.

37. On February 17, 2022, Mr. Windon prepared to start another welding project. He had all the suggested PPE equipment on, including safety glasses to wear underneath the Subject Helmet.

38. Mr. Windon struck an arc, and because the Subject Helmet appeared to darken, Mr. Windon started to weld.

39. Mr. Windon began to perform stitch welding on the driver's side floorboard of a vehicle. Because the welding intervals were so short, Mr. Windon could not immediately tell if the Subject Helmet was darkening or if his eyes had not yet adjusted to the brightness of the flash.

40. Although Mr. Windon immediately stopped welding, the damage was done.

**C. Mr. Windon's Injuries Were Caused by Defects in the Subject Helmet.**

41. As a direct and proximate result of the Subject Helmet's failure, Mr. Windon has suffered and is continuing to suffer terrible injuries and great mental distress.

42. Mr. Windon began experiencing physical symptoms shortly after his use of

[6] https://www.homedepot.com/p/Lincoln-Electric-Auto-Darkening-Welding-Helmet-with-Variable-Shade-Lens-No-7-13-1-73-x-3-82-in-Viewing-Area-Red-Fierce-Design-K3063-1/202715831

the defective Subject Helmet. Indeed, when he woke up the next morning, a strobing effect consumed his vision, and his eyes were full of matter and irritated. Mr. Windon felt as though he was looking through fan blades.

43. Mr. Windon's symptoms became progressively worse. When he awoke the following morning, he could not see anything clearly, and the strobing lights in his vision were nearly unbearable. Even with his eyes closed, the pulsing and flashing disturbances continued.

44. On Sunday, February 20, 2022, Mr. Windon was forced to spend the entire day lying in bed. He was no longer able to focus on anything at a distance or read even with glasses on.

45. Mr. Windon thereafter undertook great efforts to seek medical treatment, going to doctor after doctor to try to resolve his injuries, yet he unfortunately appears to be stuck with a condition that cannot be effectively cured.

46. On Monday, February 21, 2022, Mr. Windon contacted Southwestern Eye Center and requested to be evaluated immediately. He tried his best to work for half a day (at his job as an engineer) before going to Southwestern Eye Center, where he was examined by Dr. Pugh.

47. Dr. Pugh found Mr. Windon had exposure keratoconjunctivitis in both eyes, a condition that results from the eye's surface not being adequately protected.

48. Over the next three days, Mr. Windon attempted yet was unable to work.

49. By March 14, 2022, Mr. Windon's vision issues remained so troubling that he could not go on his preplanned vacation. He used the next four days to try to rest and recover, though his symptoms did not lessen.

50. On March 17, 2022, Mr. Windon returned to Southwestern Eye Center. Dr. Pugh again found Mr. Windon presented with exposure keratoconjunctivitis, however he still could not diagnose Mr. Windon's medical condition.

51. On March 21st and 24th, Mr. Windon went back to Southwestern Eye Center to be fitted for contacts. Mr. Windon's injuries, however, were not just focal. Even with

7

glasses and contacts taking care of the physical optics portion of Mr. Windon's vision, he could not see clearly—everything he looked at seemed to be moving; when he closed his eyes, he saw bright lights flashing and pulsating; and when he was in a dark room, he experienced as many as four superimposed bright flashes per second.

52. On April 5, 2023, Mr. Windon went to Barnet Dulaney Perkins Eye Center, where Dr. Nappi performed an eye exam and discussed with Mr. Windon his candidacy for an eye lens replacement.

53. Over the next month, the intensity of Mr. Windon's symptoms remained.

54. On May 25, 2022, Mr. Windon went back to Southwestern Eye Center and met with Dr. Adelberg, a retinal specialist. Dr. Adelberg noted that Mr. Windon had multiple vitreous floaters, and he diagnosed Mr. Windon with a persistent, ocular migraine and central scotoma in both eyes.

55. Dr. Adelberg referred Mr. Windon to Dr. Subei, a Neuro-Ophthalmologist at Foothills Neurology, for treatment.

56. Prior to his appointment at Foothills Neurology, on June 1, 2022, Mr. Windon took a field of vision test at Southwestern Eye Center. Central scotoma in both eyes was again found.

57. On June 8, 2022, Mr. Windon underwent multiple eye tests, including another field of vision test, at Foothills Neurology.

58. On June 14, 2022, Mr. Windon returned to Foothills Neurology for his initial appointment with Dr. Subei. Dr. Subei ordered Orbital and Brain MRIs, as well as an EEG, VEP, and an ERG. Dr. Subei also referred Mr. Windon for a retinal consult.

59. On June 24, 2022, Mr. Windon saw Dr. Bakall at Associated Retinal Consultants. Dr. Bakall explained to Mr. Windon that the findings of his retinal exams were most likely consistent with persistent ophthalmoplegic migraine/visual snow. **Visual snow syndrome is a chronic condition with no general effective treatment strategy.**

60. On June 25, 2022, Mr. Windon went to Simon Med Imaging to undergo the MRIs.

61. On July 5, 2022, Mr. Windon went to Foothills Neurology to undergo the EEG test, and he returned on July 7th for the VEP test.

62. The MRIs, EEG, and VEP all returned significantly normal findings.

63. On July 8, 2022, Dr. Subei determined that **the most probable cause of Mr. Windon's symptoms was retinal damage due to the welding incident.**

64. On July 18, 2022, Mr. Windon had a follow up appointment with Dr. Subei. Based on Mr. Windon's severe symptoms and largely normal test results, Dr. Subei's diagnosis favored Welder's Maculopathy, a form of photochemical damage to the retinas. **Dr. Subei reaffirmed that such damage was caused by the bright welding lights.**

65. Mr. Windon's severe symptoms and vision issues—such as seeing non-stop flashing even when his eyes are closed—took a significant toll on him. This constant and chronic condition resulted in extreme frustration and anxiety, to the point where Mr. Windon truly and regularly considered whether he could live with such a level of mental and psychological torment.

66. On August 3, 2022, Optima Medical diagnosed Mr. Windon with severe major depression.

67. Mr. Windon also saw a psychiatrist at the Mayo Clinic to work on improving his mental health.

68. On October 28, 2022, Mr. Windon had another appointment with Dr. Bakall and underwent the ERG test. Dr. Bakall confirmed that Mr. Windon's symptoms are most likely attributable to persistent ophthalmoplegic migraines and Visual Snow Syndrome.

69. Now, nearly two years after the accident, Mr. Windon continues to experience ocular migraines with auras and eye pressure. His symptoms are nonstop—24/7—and include: everything appears washed-out in colorless light; objects look as though they are shifted down and to the right and rapidly moving; he sees flickering dots persistently across his field of vision; he sees an "after image" for 15-25 seconds of any bright lights, such as lights through vertical window blinds or reflections from the sun; and he sees flashing, superimposed bright lights, and pulsing from dark to light, which makes it especially

9

difficult for Mr. Windon to see in low-light conditions. Such symptoms have also made it especially difficult for Mr. Windon to work, including reading, reviewing electrical schematics and technical drawings, and writing code and performing other computer work.

70. Mr. Windon bought and relied on the Subject Helmet to protect him. But without warning, it failed and left him with extreme physical and mental damages. All of Mr. Windon's daily activities, professional activities, and hobbies have been disrupted, his personal relationships have been damaged, and his quality of life has been devastated.

## COUNT I

## (STRICT LIABILITY – DEFECTIVE PRODUCT BY DEFENDANTS)

71. Plaintiffs incorporate by reference all previous allegations in their Complaint.

72. Because Defendants Tecmen and Lincoln Electric manufactured and prepared a product for sale—the Subject Helmet—with unreasonably dangerous defects, Defendant Home Depot sold such product to Mr. Windon, all failed to warn of its hazards, and such defects caused Mr. Windon to suffer injuries, strict liability attaches.

73. Defendant Home Depot is deemed a "seller" under Arizona law.

74. Defendants Tecmen and Lincoln Electric are deemed "manufacturers" under Arizona law.

75. Defendant Tecmen originally manufactured the Subject Helmet and Lincoln Electric prepared the Subject Helmet for sale, which Mr. Windon purchased from Defendant Home Depot in January 2015.

76. As a manufacturer, prior to, on, and after the date of the Subject Helmet's failure, Defendants Tecmen and Lincoln Electric had a duty to know or, through testing and other investigation, should know of the product's hazards. They then had the duty to provide adequate warnings about those hazards to the foreseeable consumer, such as Mr. Windon.

77. The Subject Helmet was in a defective condition when Mr. Windon purchased it from Defendant Home Depot, as prior to the incident, Mr. Windon only ever used the Subject Helmet in a proper manner and stored it in a clean, dry location.

78. In Arizona, a product can be defective if it fails to satisfy either the "consumer

10

expectations" test or the risk/benefit test. Both are satisfied here.

79. The Subject Helmet's design and/or manufacturing defects, as well as the lack of adequate warnings as to the risks involved in using the product, made the product unreasonably dangerous to its users employing it in a reasonably foreseeable manner.

80. Mr. Windon used the Subject Helmet in a reasonably foreseeable manner by wearing it while performing welding.

81. The Subject Helmet was defective in design and/or manufacturing as its auto-darkening feature failed during use by Mr. Windon while welding.

82. The Subject Hood's design defect, in particular, made the Subject Hood unreasonably dangerous because beyond manually testing the functioning of the helmet by placing it in light and seeing whether it darkens, the helmet does not provide a low battery or battery failure indicator, a way for the user to test the internal battery, or a way for the user to remove and replace the battery.

83. As a result of the design and/or manufacturing defects, the Subject Helmet failed to perform as safely as an ordinary consumer, including Mr. Windon, would expect when using it in an intended and reasonably foreseeable manner.

84. The defect in the design of the Subject Helmet is further evidenced by the 2017 version of the Subject Helmet, which provides a low battery indicator, a battery test function, and an easy way to remove and replace the two AAA batteries.[7]

85. No benefits of the Subject Helmet would have been lost or reduced by incorporating these safety features. Rather, the usefulness and desirability would be enhanced.

86. Likewise, the lack of appropriate warnings as to the Subject Helmet's dangerous characteristics made the Subject Helmet defective and unreasonably dangerous.

87. Defendants failed to provide adequate warnings to foreseeable consumers, such as Mr. Windon, about the Subject Helmet's hazards. Indeed, neither the Subject Helmet, operator's manual, or Defendants' respective websites warn of the batteries failing

---

[7] https://www.lincolnelectric.com/assets/servicenavigator-public/lincoln3/imt10358.pdf

11

or the visual disturbances that can result from the light and arc rays.

88. The Subject Helmet's design and/or manufacturing defects, and Defendants' failure to warn of the battery charge issue and sensory damage that could result, were a direct and proximate cause of Mr. Windon's injuries. Shortly after using the defective Subject Helmet, Mr. Windon's vision began to deteriorate—a reasonably foreseeable consequence of exposure to bright light and ultraviolet and infrared rays.

89. Therefore, Defendants are liable for Mr. Windon's injuries, including the extreme and lasting visual disturbances and tremendous mental distress as described above, as well as other special and general damages according to proof at trial.

## COUNT II
### (NEGLIGENCE – DESIGN, MANUFACTURE, INSPECTION, AND DISTRIBUTION BY DEFENDANTS TECMEN AND LINCOLN ELECTRIC)

90. Plaintiffs incorporate by reference all preceding paragraphs.

91. Prior to, on, and after the date of the Subject Helmet's failure, Defendants Tecmen and Lincoln Electric had a duty to exercise due care and avoid unreasonable risk of harm in and about their design, testing, manufacture, inspection, distribution, marketing, and sale of the Subject Helmet.

92. Put simply, Defendants Tecmen and Lincoln Electric owed a duty of care to all of its retailer customers to ensure the products it placed into the stream of commerce, including the Subject Helmet, were reasonably safe for use.

93. Prior to, on, and after the date of the Subject Helmet's failure, Defendants Tecmen and Lincoln Electric designed, tested, manufactured, inspected, distributed, marketed, and sold the Subject Helmet for use by consumers, such as Mr. Windon, in the United States, including Arizona.

94. Upon information and belief, prior to and on the date of the Subject Helmet's failure, Defendants Tecmen and Lincoln Electric breached its duty of care by, but not limited to, the following:

. . .

. . .

12

a. Designing, manufacturing, and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking safety measures or including warnings to reduce or avoid harm;

b. Failing to perform reasonable pre- and post-market testing of the Subject Helmet to determine whether or not the product was safe for its intended use;

c. Failing to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would use the Subject Helmet, including Mr. Windon;

d. Advertising, marketing, and recommending the use of the Subject Helmet, while concealing and failing to disclose or to warn of the dangers known by Defendants Tecmen and Lincoln Electric to be connected with and inherent in the use of the Subject Helmet;

e. Representing that the Subject Helmet was safe for its intended use when, in fact, Defendants knew or should have known the product was not safe for its intended purpose;

f. Failing to use reasonable and prudent care in the design, research, manufacture, and development of the Subject Helmet so as to avoid the risk of serious harm associated with its use;

g. Failing to establish an adequate quality assurance program used in the manufacturing of the Subject Helmet; and

h. Failing to perform adequate evaluation and testing of the Subject Helmet, which would have revealed the propensity of the Subject Helmet to cause injuries as described herein.

95. As a direct and legal result of the above-described negligence in design, testing, manufacture, inspection, distribution, marketing, and sale of the Subject Helmet, Mr. Windon sustained and continues to suffer from the great injuries and damages described above.

## COUNT III
### (NEGLIGENCE - FAILURE TO WARN AND RECALL BY ALL DEFENDANTS)

96. Plaintiffs incorporate by reference all preceding paragraphs.

97. Prior to, on, and after the date of the Subject Helmet's failure, and at all relevant times, Defendants designed, manufactured, distributed, marketed, and/or sold the Subject Helmet for use by consumers, such as Mr. Windon, in the United States, including Arizona.

98. Prior to, on, and after the date of the Subject Helmet's failure, Defendants had

13

a duty to exercise due care and avoid unreasonable risk of harm in and about their design, testing, manufacture, distribution, marketing, and sale of the Subject Helmet.

99. Defendants owe a duty of care to all of their retail customers, including Mr. Windon, to ensure the products it places into the stream of commerce are reasonably safe for use.

100. Prior to, on, and after the date of the Subject Helmet's failure, and at all relevant times, Defendants knew or reasonably should have known that the Subject Helmet was unreasonably dangerous or likely to be dangerous when used in a reasonably foreseeable manner.

101. Prior to, on, and after the date of the Subject Helmet's failure, and at all relevant times, Defendants became aware that the defects of the Subject Helmet resulted in failures similar to those experienced by Mr. Windon.

102. A cursory inspection of the reviews on Home Depot's website exposes the serious danger the Subject Helmet poses.[8]

★☆☆☆☆                                                                Apr 12, 2023

**Welding helmet**

It cost $160 with taxes $183 it was definitely pre-used, completely dirty, and very cheap material.

by Disappointed

Helpful?

★☆☆☆☆                                                                Feb 5, 2021

**Barely used and it doesn't work anymore**

I bought this helmet about 5 years ago and I have used it less than 20 times. It attempts to darken but occasionally lets the full arc shine through at full strength. I won't trust my eyes to this helmet anymore.

by gilbertjuan

Helpful?     1 found this review helpful

---

[8] https://www.homedepot.com/p/Lincoln-Electric-Auto-Darkening-Welding-Helmet-with-Variable-Shade-Lens-No-7-13-1-73-x-3-82-in-Viewing-Area-Red-Fierce-Design-K3063-1/202715831

14

★ ☆ ☆ ☆ ☆

Aug 25, 2019

**Worthless and dangerous**

Don't buy this. Simply. It is unreliable at best. It will fail to darken when striking the arc. It happened to me just after a couple of uses. This is a very dangerous equipment. Should be retired from market.

by MechanicalEngineer

Helpful?

★ ☆ ☆ ☆ ☆

Jul 16, 2018

**Garbage**

Finally decided to get an auto- dark shield. Brand name should be fine right?... Nope garbage. Used it today for the first time, worked correctly for about 10 minutes. Then started to blink on and off and then would dim at all. Then it went completely dark and I was back to the flip down method. Waste of $$

by Jflan

★ ☆ ☆ ☆ ☆

Feb 22, 2017

**This piece of junk lost darkening in the middle of welding which nearly gave me welding flash. Of...**

This piece of junk lost darkening in the middle of welding which nearly gave me welding flash. Of course it failed 10 days after the 90 day return policy. I grabbed my cheap Fornay helmet that is 4 years old and still works perfectly.

by blinded

Helpful?     2 found this review helpful

★ ☆ ☆ ☆ ☆

Dec 27, 2015

**Failed: too long on the shelf**

The helmet didn't work even after hours of charging. The user guide was dated March 2011 and I suppose the batteries, which cannot be replaced, were dead. Waste of time purchasing and returning. The manual is not clear. There is no diagnostic test to confirm auto darkening feature. Bad product if it's been on the shelf for 4 + years.

by mckbill

Helpful?     1 found this review helpful

★ ☆ ☆ ☆ ☆

Jul 25, 2015

**RUN FROM THIS PRODUCT!**

Worst welding shield I have ever used...I am in ironworker and weld for a living I needed a shield quick to replace a broken one and thought the Lincoln would give a good affordable replacement. Boy was I wrong it is not even two months old and very unreliable and that is not being used daily. In the middle of welding it will blink on and off sometimes it will not dark in at all. I would give it a -5 star rating if they permitted it but unfortunately I had to give it at least a one star! Stay away from this shield if you want your eyes to last you!

by Anonymous

Helpful?     4 found this review helpful

15

103. Along with the online reviews, several videos online detail similar incidents that demonstrate the existence of the Subject Helmet's dangerous condition. Such other similar incidents ("OSI") further demonstrate that Defendants have known for years about the very safety-related defects in the Subject Helmet that are present in this case—the auto-darkening feature failing, the lack of warnings when the auto-darkening feature is no longer working properly, and an inability for users to sufficiently test whether the auto-darkening feature is performing correctly.

104. Upon information and belief, prior to and on the date of the Subject Helmet's failure, Defendants breached their duty of care by, but not limited to, the following:

   a. Failing to use reasonable care to recall, warn, or instruct consumers, including Mr. Windon, about the defects and unreasonably dangerous condition or about facts making the Subject Helmet likely to be dangerous;

   b. Failing to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would use the Subject Helmet, including Mr. Windon;

   c. Advertising, marketing, and recommending the use of the Subject Helmet, while concealing and failing to disclose or to warn of the dangers known by Defendants to be connected with and inherent in the use of the Subject Helmet;

105. Defendants continue to fail to recall or warn of the Subject Helmet's defects and dangers up until the present time.

106. Moreover, because each OSI provided notice to Defendants of defects and the severity of danger presented by the defects, Defendants' continued distribution of the Subject Helmet reflects a conscious disregard of a known risk and negligence in failing to warn.

107. That the Subject Helmet's operator's manual advises users to test the hood prior to use provides additional support that Defendants knew of or had reason to know of the hood's risks and is thus compelling evidence that Defendants' conduct to continue to sell the Subject Helmet without additional warnings was highly unreasonable.

108. Reasonable manufacturers and sellers under the same or similar circumstances would have recalled the Subject Helmet or at least warned of the Subject

16

Helmet's defects and would thereby have avoided and prevented harm to consumers, including Mr. Windon.

109. Damage to eyes and sensory perception are foreseeable results of the auto-darkening feature failing to work. And due to the lack of warnings, this danger was hidden; a consumer, like Mr. Windon, could not take any further precaution to avoid injury.

110. As a direct and legal result of the above-described negligent failure to recall or warn, Mr. Windon sustained and continues to suffer from the great injuries and damages as described above.

## COUNT IV

### (LOSS OF CONSORTIUM FOR PLAINTIFF SUSAN WINDON)

111. Plaintiffs incorporate by reference all preceding paragraphs.

112. Defendants owed Plaintiff certain duties, including but not limited to, exercising due care and avoiding unreasonable risk of harm in and about their design, testing, manufacture, inspection, distribution, marketing, and sale of the Subject Helmet.

113. Defendants breached their duties by, and not limited to, failing to use reasonable and prudent care in the design, research, manufacture, and development of the Subject Helmet so as to avoid the risk of serious harm associated with its use; failing to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would use the Subject Helmet; and failing to disclose or to warn of the dangers known to be connected with and inherent in the use of the Subject Helmet.

114. Defendants' negligent conduct was the proximate cause of Plaintiff Susan Windon's loss of consortium, including but not limited to:

    a. Physical intimacy;

    b. Inability to do activities that she used to do with her husband;

    c. Marital strains;

    d. Loss of services;

    e. Aid and comfort;

17

f. Enjoyment of life; and

g. Other losses to be presented at trial.

115. Plaintiff Susan Windon's loss of consortium damages are the proximate result of Defendants' negligence as alleged herein.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury in this matter. This matter is not subject to compulsory arbitration.

## TIER DESIGNATION

Plaintiffs certify that this case warrants Tier 3 designation under Ariz. R. Civ. P. 26.2(b)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment to be entered against Defendants as follows:

A. For general damages to compensate Plaintiffs for the pain, mental and/or emotional suffering, limitations, and stress experienced and will experience in the future;

B. For other reasonable general and special damages for Plaintiffs' injuries according to proof at the time of trial;

C. For compensatory damages in an amount to be proven at trial;

E. For costs incurred herein as permitted by Arizona law; and,

F. For such other and further relief as the Court deems just and proper.

DATED: January 10, 2024.

GALLAGHER & KENNEDY, P.A.

By: /s/ *Robert W. Boatman*
Robert W. Boatman
Shannon L. Clark
Shayna R. Frieden
2575 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
Attorneys for Plaintiffs

9786579v1/41199-0001

18

# EXHIBIT 4

Richard M. Amoroso (AZ Bar No. 010756)
richard.amoroso@squirepb.com
Andrew Campa (AZ Bar No. 038346)
andrew.campa@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
Telephone:  (602) 528-4000
Facsimile:   (602) 253-8129

*Attorneys for Defendant,*
*Welding Cutting Tools & Accessories, LLC*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aaron Windon and Susan Windon, husband and wife,<br><br>                         Plaintiffs,<br>v.<br><br>Home Depot U.S.A., Inc., d/b/a The Home Depot, a foreign corporation; Welding Cutting Tools & Accessories, LLC, a foreign limited liability company; Tecmen Electronics Co., Ltd., a foreign corporation; John and Jane Does I-X; Black and White Corporations I-X; and ABC Partnerships I-X,<br><br>                         Defendants. | CASE NO.:<br><br>**DECLARATION OF RICHARD M. AMOROSO, ATTORNEY FOR DEFENDANT**<br><br>(Removal from Maricopa County Superior Court, Case No. CV2024-000655) |

        I, Richard M. Amoroso, declare as follows pursuant to 28 U.S.C. §1746: 1. I am a duly licensed attorney in the bar of the State of Arizona and am admitted to practice law before this Court. I represent Defendant Welding Cutting Tools & Accessories, LLC, in the above-referenced action. The statements made in this declaration are based upon my own personal knowledge and, if sworn as a witness, I could testify competently to them.

        I have prepared and filed the Notice of Removal on behalf of Welding Cutting Tools & Accessories, LLC in the above-referenced action. **Exhibits 1 and 3** to that Notice of Removal contains true and complete copies of all pleadings and other documents filed in the underlying

-1-

state court action of Aaron Windon et al. v. Home Depot U.S.A., Inc., et al., CV2024-000655, in the Superior Court of Maricopa County, Arizona. I declare under penalty of perjury that the foregoing is true and correct.

RESPECTFULLY SUBMITTED this 7th day of March, 2024.

SQUIRE PATTON BOGGS (US) LLP

By: */s/ Richard M. Amoroso*
Richard M. Amoroso (AZ Bar No. 010756)
**SQUIRE PATTON BOGGS (US) LLP**
2325 E. Camelback Road, Suite 700
Phoenix, AZ 5016
Tel: (602) 528-4000 | Fax: (602) 253-8129
*Attorney for Defendant*
*Welding Cutting Tools & Accessories, LLC*

# EXHIBIT 5

Richard M. Amoroso (AZ Bar No. 010756)
richard.amoroso@squirepb.com
Andrew Campa (AZ Bar No. 038346)
andrew.campa@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
2325 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
Telephone: (602) 528-4000
Facsimile: (602) 253-8129

*Attorneys for Defendant,*
*Welding Cutting Tools & Accessories, LLC*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| Aaron Windon and Susan Windon, husband and wife, <br><br> Plaintiffs, <br><br> v. <br><br> Home Depot U.S.A., Inc., d/b/a The Home Depot, a foreign corporation; Welding Cutting Tools & Accessories, LLC, a foreign limited liability company; Tecmen Electronics Co., Ltd., a foreign corporation; John and Jane Does I-X; Black and White Corporations I-X; and ABC Partnerships I-X, <br><br> Defendants. | CASE NO.: CV2024-000655 <br><br> **NOTICE OF FILING NOTICE OF REMOVAL** <br><br> *[Assigned to the Honorable Scott Blaney]* |

Defendant Welding Cutting Tools & Accessories, LLC ("WCTA"), pursuant to 28 U.S.C. §1441(c), et seq, hereby notify this Court that it filed a Notice of Removal of this action to the United States District Court, District of Arizona. A copy of the Notice of Removal (exclusive of exhibits) is attached as **Exhibit A**

RESPECTFULLY SUBMITTED this 7th day of March, 2024.

SQUIRE PATTON BOGGS (US) LLP


By: */s/ Richard M. Amoroso*
Richard M. Amoroso
Andrew Campa
*Attorneys for Defendants,*
*Welding Cutting Tool & Accessories, LLC*

-1-

ORIGINAL e-filed via
AZTurboCourt on this
7th day of March, 2024.


COPY of the foregoing served via mail and email
this same date to:

Robert W. Boatman
Shannon L. Clark
Shayna R. Frieden
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone: (602) 530-8000
Facsimile: (602) 530-8500
Email: rwb@gknet.com
        slc@gknet.com
        shayna.frieden@gknet.com
*Attorneys for Plaintiffs*


By:  */s/ Tammy Gougeon*
        Tammy Gougeon